UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OCTAVIO PENEDO,                                    No. 10-12979

        Plaintiff,                                    District Judge Sean F. Cox
v.                                                 Magistrate Judge R. Steven Whalen

VALEO, INC.,

        Defendant.
                                            /

## REPORT AND RECOMMENDATION

On July 28, 2010, Plaintiff Octavio Penedo filed a civil complaint pursuant to the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., alleging that Defendant Valeo, Inc. ("Valeo") wrongfully denied him severance pay benefits.[1] Before the Court are the Plaintiff's Motion for Summary Judgment [Doc. #11] and the Defendant's Motion to Affirm Plan Administrator's Denial of Severance Benefits [Doc. #12], which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that Plaintiff's Motion be GRANTED and Defendant's Motion DENIED.

### I.   FACTS

Plaintiff was employed by Valeo as the Tax Director for Mexican Affairs, an executive-level position. As such, he was provided with certain employee welfare benefits under Valeo's Employee Benefit Plan (the "Plan") (AR 3-4).[2] In terms of the severance pay benefits, the Plan provided as follows:

> "You will be eligible for severance benefits under the Plan if your employment is permanently and involuntarily terminated because of one of the following events:
>
> -   a discontinuation or change of organization or operation where you are employed;

---

[1] Plaintiff also brought a breach of contract claim as Count II of the complaint. On May 27, 2011, the case was ordered to non-binding mediation [Doc. #25]. On June 1, 2011, the parties stipulated to the dismissal of Count II [Doc. #26], and on July 11, 2011, the Court vacated the order referring the case to mediation [Doc. #28].

[2] "AR" refers to the Administrative Record, submitted with Defendant's Motion [Doc. #12] as Exhibit 1, Joint Appendix.

- the elimination of your job or position;

- the sale of a facility where you are employed if you are not offered a comparable or better position with the buyer or successor employer or with the Company or an entity related to the Company by common ownership;

- any other reason as determined by the Company, in its sole discretion.

However, even if one of the events described above occurs, you will **not** be eligible for severance benefits if:

- you voluntarily terminate your employment with the Company;

\*                              \*                              \*

- you refuse to accept a comparable or better position with a buyer or successor employer of the Company or with the Company or an entity related to the Company by common ownership." (AR 57).

The Plan also gave the Plan Administrator discretionary authority to determine eligibility for benefits, and provided that "[t]he Plan Administrator has the necessary discretionary authority and control over the Plan to require deferential judicial review pursuant to the U.S. Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch* (1989)." (AR 42-43).

In December of 2009, Valeo advised Plaintiff that his position was to be transferred to Mexico, and that Plaintiff "had the option of moving to Mexico." *Plaintiff's Affidavit* (AR 83). Plaintiff states that "on December 7, 2009, I was also verbally told about the transfer of my job to Mexico, and my option to transfer to Mexico, by Valeo's Human Resource Director, Robert Wade." *Id*. On January 5, 2010, Plaintiff sent an email to his supervisor, Mrs. Curis, asking him to confirm whether his salary would not be paid in U.S. dollars, whether Valeo would cease making Social Security contributions, and whether there would be no access to U.S. health coverage. Mr. Curis responded, stating, "Correct but Francoise is investigating that." (AR 99, 83). Upon learning this, Plaintiff sent a letter to Mr. Curis on January 7, 2010, stating as follows:

"It is with deep regret that I inform you that I will be unable to accept Valeo mandated transfer to Mexico. I accepted my current position with the agreement that I would be working in Michigan with a certain compensation package and benefits.

Unfortunately, Valeo mandated transfer to Mexico is not comparable to my existing employment terms, among others, on base salary, benefits, accrued benefits, and working hours week, nor is it offering to continue making further contributions to the U.S. Social Security or provide U.S. health coverage. Therefore, given my concern

> about Valeo Inc.'s ability to honor my existing employment terms or to offer me a position with comparable employment terms, I am forced to look at other options as of January 11, 2010.
>
> It has been an honor to have been a part of this company for 13 years. Years in which I raised a family, purchased my first home, became part of the community and was fortunate to become an American citizen. I wish the company every success and hope the door remains open in the future.
>
> In keeping with company policy, I trust that my severance package will be honored and I thank you for this consideration." (AR 63).

The following day, on January 8, 2010, Valeo's Human Resources Manager, Andy Lowe, sent a reply to Plaintiff's letter, stating as follows:

> "We received and have accepted your voluntary resignation of employment effective Friday, January 8th. We certainly wish you good luck in the options that you are pursuing as of January 11, 2010.
>
> Also, we want to correct and respond to some of the statements you made in your January 7th letter. First, at the time you resigned, no offer had been made to you regarding the potential transfer to its Mexican operations. Furthermore, in accordance with our policies, you will be paid all compensation and benefits due to you as of the day of your resignation, with no additional severance owed.
>
> The purpose of this letter is to confirm the terms of your separation from Valeo, Inc. effective January 8th, 2010."

On January 30, 2010, Plaintiff wrote a letter to Robert Wade, disputing statements made by Mr. Lowe. Specifically, Plaintiff stated,

> "I was very surprised to learn that according to Andy's letter presumably 'no offer had been made' to me 'regarding the potential transfer to its Mexican operations', when in fact I was scheduled to start working in Mexico by January 11, 2010 according to various communications and email records I have on this matter. Moreover, on December 4, 2009, I was informed by Mrs. France Curis that my position was being transferred to Mexico and that you had come to my office in the week of December 7, 2009 to personally ask me if she had conveyed with me Valeo's decision on such transfer. All of which evidencing Valeo's mandated transfer to Mexico and its readiness to breach my employment terms and benefits." (AR 65).

The Plaintiff concluded by stating, "In addition, I did not submit[] a resignation letter but was turning down your mandated transfer to Mexico." *Id.*

In response, Robert Wade sent Plaintiff a letter on February 17, 2010 (AR 66-67). He explained the transfer of Plaintiff's position to Mexico as follows:

> "The position you last occupied was transferred to Mexico as a wholesale transfer of a position, and not one offered on a temporary basis that would have entitled you to return to a position to the United States. Such positions are not subject to ex-patriot benefits. Valeo moved the position based on the Company's business decision to reorganize its operations on a worldwide basis. A Mexican Controller was appointed in late 2009 in Mexico, naturally calling for a tax director for Mexico to be assigned to work with the Controller in Mexico. Also you were an at-will employee; Valeo had no obligation to continue the terms of the position you held in the United States after the job was moved to Mexico." *Id.* at 66.

Mr. Wade then explained as follows why Valeo was denying Plaintiff's request for severance pay:

> "Furthermore, while you are correct that arrangements were in process for you to start working in Mexico on Monday, January 11, 2010, those arrangements were based on your actions to that date. You had posed a number of questions to the Company. You did not, however, provide the Company with any options in response to your apparent non-acceptance of the answers that had been provided; nor did you timely advise that you were rejecting the position. Instead, before any confirmed written offer could be presented to you, you chose to resign. Moreover, you did so without sufficient notice to the Company, causing us to be unable to timely find a suitable replacement. You left to pursue other employment and as such Valeo has no obligation under its policies to pay severance." *Id.*

Mr. Wade closed by saying, "It is unfortunate that you chose to resign from your employment with Valeo in this abrupt fashion." *Id.* at 67.

The correspondence continued with Plaintiff's letter of April 30, 2010 to Robert Wade, in which he stated, "As already indicated in my prior letters, I categorically deny that I was resigning, but instead, I clearly stated to you and everyone else in Valeo that I had to turn down Valeo's offer to be transferred to Mexico since it was not a none [sic] equivalent position and Valeo was ready to make me loose [sic] my benefits and existing pay....It is most unfortunate that Valeo decided to eliminate my position, as you have acknowledge[d], in the United States." (AR 68).

Robert Wade responded by letter dated May 27, 2010, accusing Plaintiff of "mischaracterizations of both the facts surrounding your resignation and the statements in our February 17, 2010 letter to you." He continued:

> "First in contrast to your efforts to revise what actually occurred, your words were clear when we spoke–you were 'resigning.' Also, contrary to your effort to take portions of sentences out of context, we did not eliminate the U.S. position; we moved it in accordance with our reorganization. The job of tax director for Mexico was relocated, logically, to Mexico." (AR 69).

-4-

On June 16, 2010, Plaintiff's attorney sent an administrative appeal request for benefits, directed to the Valeo Plan Administrator. (AR 70-71). Counsel's letter summarized the chronology of events, set forth facts, and, in answer to Robert Wade's statements that Plaintiff was not entitled to severance benefits because he voluntarily resigned, stated:

> "Finally, Mr. Penedo did not 'voluntarily resign.' Rather, as is clear from his January 7, 2010 letter to Valeo (Ex. 1), Mr. Penedo simply declined to accept the 'mandated transfer' to Mexico. Valeo's attempt to characterize Mr. Penedo's termination as a voluntary quit is contrary not only to the facts but also the plain terms of Valeo's Severance Benefit Program." (AR 71).

On July 2, 2010, Valeo sent Plaintiff's counsel a letter, which was internally identified as "the written decision of the Plan Administrator of the Valeo, Inc. Employee Benefit Plan...regarding Octavio Penedo's claim for Plain severance benefits...." (AR 148). The decision was signed by Robert Wade, and concluded that "Mr. Penedo is not eligible for Plain severance benefits because he voluntarily resigned his employment with the company, as indicated in his January 7, 2010 letter to France Curis, the company's Group Tax Director." (AR 148).

Following this adverse decision, Petitioner filed a complaint for judicial review.

## II.   STANDARD OF REVIEW

Under ERISA, when (as in the present case) a plan administrator or employer has the discretionary authority to determine eligibility for benefits, federal courts review a decision to deny benefits under "the highly deferential arbitrary and capricious standard of review." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 168-69 (6th Cir. 2003), quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th cir. 1996). "[T]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was rational in light of the plan's provisions. Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Williams v. International Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)(internal citations and quotations omitted).

Nevertheless, "[d]eferential review is not no review, and deference need not be abject." *McDonald, supra*, 347 F.3d at 172 (internal citations omitted). *See also Hackett v. Xerox Corp. Long-Term disability Income Plan*, 315 F.3d 771, 774-75 (7th cir. 2003) ("Review under the deferential arbitrary and capricious standard is not a rubber stamp and deference need not be abject. Even under the deferential review we will not uphold a termination when there is an absence of reasoning in the record to support it"); *Swaback v. American Info. Techs. Corp.*, 103 F.3d 535, 540 (7th Cir. 1996) ("Although we review the committees' actions in a deferential light, we shall not rubber stamp their decisions."); *Finazzi v. Paul Revere Life Ins. Co.*, 327 F.Supp.2d 790, 796 (W.D. Mich. 2004) ("the Court is not obliged to 'rubber stamp' [defendant's] termination of benefits where, considering all the evidence, its reasoning is not trustworthy."). As the Sixth Circuit stated in *McDonald*, 347 F.3d at 172:

> "[T]he district court had an obligation under ERISA to review the administrative record in order to determine whether the plan administrator acted arbitrarily and capriciously in making ERISA benefits determinations. This obligation inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues. Otherwise, courts would be rendered to nothing more than rubber stamps for any plan administrator's decision as long as the plan was able to find a single piece of evidence–no matter how obscure or untrustworthy–to support a denial of a claim for ERISA benefits."

### III. DISCUSSION

For Plaintiff to be eligible for severance benefits under Valeo's Plan, it must be shown that (1) his position or job was eliminated *or* there was "a discontinuation or change of organization or operation *where you are employed*, and (2) he did not voluntarily terminate his employment with Valeo. In his May 27, 2010 letter, Robert Wade suggested that the Plaintiff's job was not "eliminated," but rather it was moved to Mexico. While this argument seems somewhat facile–no U.S. manufacturing jobs have been eliminated over the past 20 years, they have simply been moved to cheaper labor markets in other countries–it is not necessary to resolve this fine semantic distinction, because Valeo concedes that it "moved the [Plaintiff's] position based on the Company's business decision to reorganize its operations on a worldwide basis." (AR 66). Thus, there was a "change of organization or operation" where Plaintiff was employed (Michigan), transferring the

position to Mexico. Indeed, the July 2, 2010 administrative decision is based on Mr. Wade's finding that Plaintiff voluntarily quit his job, and does not contain any finding that there was no reorganization that would otherwise trigger Plaintiff's right to severance pay. ("Accordingly, even if one of the listed triggers had occurred as to Mr. Penedo, his voluntary resignation eliminated all of his eligibility for Plan severance benefits...." (AR 149).

The controlling question in this case, then, is whether Valeo's finding that Plaintiff voluntarily resigned his position was arbitrary and capricious. In making that finding, Valeo relied heavily on Plaintiff's letter of January 7, 2010. And if that letter were viewed in isolation, one could perhaps draw a rational conclusion that it was a letter of resignation. However, context is important, and the letter, as well as Plaintiff's disputed statements of January 7th, must be viewed in relation to all the facts.

The chain of correspondence between the Plaintiff and Valeo's representatives, and especially Human Resources Director Robert Wade, exposes a stark difference of opinion as to whether Mr. Penedo "voluntarily" resigned his position. There is certainly a rational and plausible basis for the Plaintiff's contention that he did not do so. His position as Tax Director for Mexico, which he held in Michigan for some 13 years, was transferred "wholesale" to Mexico, with a material reduction in pay and benefits. The Plaintiff was told he had the "option" to transfer to Mexico (AR 83), but the record does not show that Valeo gave him any other options. In fact, in his letter of February 17, 2010, Robert Wade affirmatively stated that "Valeo had no obligation to continue the terms of the position you held in the United States after the job was moved to Mexico." (AR 66). Mr. Wade also made note that Plaintiff was "an at-will employee," a statement that, while not relevant to Plaintiff's entitlement to severance benefits, tends to support a finding that the position in Mexico was a take-it-or-leave-it proposition. Indeed, even after the Plaintiff made it clear that he was not resigning, but rather declining the transfer to Mexico, Valeo offered no alternative or equivalent employment. Notwithstanding the repeated use of the talismanic phrase "voluntary resignation" in its correspondence, Valeo's actions could be more accurately viewed as a constructive discharge.

-7-

On the other hand, the Plaintiff's initial letter of January 7, 2010, and statements he allegedly made to Mr. Wade on that date might be construed to support Valeo's argument that Mr. Penedo voluntarily resigned. Again, in the context of all the facts, that is not a particularly strong inference, but it is a permissible one. And of course, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Williams v. International Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)(internal citations and quotations omitted). However, there is an additional factor that tips the balance in the Plaintiff's favor, and that is Valeo's conflict of interest.

Where the administrator of an ERISA plan both determines whether an employee is eligible for benefits and pays those benefits, "this dual role creates a conflict of interest." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). *See also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If "a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Id.* (internal citations omitted). In *Glenn*, the Supreme Court held:

> "[A] reviewing court should consider that conflict in determining whether the plan administrator has abused its discretion in denying benefits; and...the significance of the factor will depend upon the circumstances of the particular case." 554 U.S. at 108.

The Supreme Court in *Glenn* noted "that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one." *Id.* at 117. The importance of the conflict of interest, however, will depend on the other facts of the case and the closeness of the question:

> "In such instances, *any one factor will act as a tiebreaker when the other factors are closely balanced*, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance. *The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision....*" *Id.* (Emphasis added).

Conversely, the Court stated that the conflict "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy...." *Id.*

In the present case, Valeo starts off with an inherent conflict of interest because it both decides eligibility for benefits and pays benefits. But there is an even more serious conflict of interest because the very individual who wrote the administrative decision denying Plaintiff severance benefits–Human Resources Director Robert Wade–is the same person who had already made the forceful and unequivocal determination that Plaintiff "voluntarily resigned," well before the administrative appeal was filed. In fact, the resolution of the appeal was entirely dependent on who had the correct version of events–Mr. Penedo or Mr. Wade. For Mr. Wade to rule in Plaintiff's favor, he would have to reverse himself. As discussed in *Glenn*, these are clearly "circumstances [that] suggest a higher likelihood that [the conflict] affected the benefits decision." In fact, it is virtually certain that the conflict affected the decision. It is therefore appropriate to ascribe significant "case-specific importance" to what is actually a double conflict of interest. Because the other factors are "closely balanced" (and actually weigh more in Plaintiff's favor), this conflict is the tie-breaker.[3]

For these reasons, Valeo's denial of severance benefits to the Plaintiff was arbitrary and capricious, and Plaintiff's motion for summary judgment should therefore be granted.

## IV.   CONCLUSION

I recommend that Plaintiff's motion for summary judgment [Doc. #11] be GRANTED and that Defendant's motion to affirm plan administrator [Doc. #12] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505

---

[3] Valeo relies on *Cooper v. Life Ins. Co. of North America*, 486 F.3d 157, 165 (6th Cir. 2007), where the Court rejected a "sliding scale" approach to assessing the import of a conflict of interest, instead requiring a plaintiff "not only to show the purported existence of a conflict of interest, but also to provide significant evidence that the conflict actually affected or motivated the decision at issue." Even assuming that *Cooper* survives the Supreme Court's decision in *Glenn*, the fact that Robert Wade was entrusted with reviewing his own pre-determination of the appeal unquestionably supplies that "significant evidence."

(6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                       s/R.StevenWhalen
                                                       R. STEVEN WHALEN
                                                       UNITED STATES MAGISTRATE JUDGE

Dated: August 31, 2011

_____

### CERTIFICATE OF SERVICE

I hereby certify on August 31, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on August 31, 2011: **None.**

                                        s/Michael E. Lang
                                        Deputy Clerk to
                                        Magistrate Judge R. Steven Whalen
                                        (313) 234-5217