UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Octavio Penedo,

    Plaintiff,

v.                                                                                   Case No. 10-12979

Valero Inc.,                                                                 Honorable Sean F. Cox

    Defendant.

_____/

# ORDER ADOPTING
# REPORT AND RECOMMENDATION

Plaintiff Octavio Penedo ("Plaintiff") filed this ERISA action against his former employer, Defendant Valeo Inc. ("Valeo"), alleging that Valeo wrongfully denied Plaintiff severance benefits under Valeo's Employee Benefit Plan. Thereafter, Plaintiff filed a motion for summary judgment to reverse the Plan Administrator's decision and Valeo filed a motion to affirm the Plan Administrator's decision. Those motions were referred to Magistrate Judge Steven Whalen, pursuant to 28 U.S.C. § 636, for issuance of a report and recommendation.

On August 31, 2011, Magistrate Judge Whalen issued his report and recommendation ("R&R") (D.E. No. 29), wherein he recommends that the Court grant Plaintiff's motion for summary judgment and deny Valeo's motion for summary judgment. On September 16, 2011, Valeo filed written objections to the August 31, 2011 R&R. (D.E. No. 30).

For the reasons set forth below, the Court shall **ADOPT** the report and recommendation in its entirety.

BACKGROUND

Plaintiff was employed as the Tax Director of Mexican affairs for Valeo at their Troy, Michigan office. Valeo provided Plaintiff a benefits package, which included severance benefits, pursuant to Valeo's Employee Benefit Plan (the "Plan"). The Plan booklet provides the following:

> You will be eligible for severance benefits under the Plan if your employment is permanently and involuntarily terminated because of one of the following events:
>
> - a discontinuation or change of organization or operation where you are employed;
>
> - the elimination of your job or position;
>
> - the sale of a facility where you are employed if you are not offered a comparable or better position with the buyer or successor employer or with the Company or an entity related to the Company by common ownership;
>
> - any other reason as determined by the Company, in its sole discretion.
>
> However, even if one of the events described above occurs, you will not be eligible for severance benefits if:
>
> - you voluntarily terminate your employment with the Company . . .

(Record at 57). The Plan also provides that Valeo's Plan Administrator has full discretionary authority to administer and interpret the Plan, determine eligibility for and the amount of benefits, determine the status and rights of participants, and make rulings and factual determinations. (Record at 42-43). The Plan also states, "The Plan Administrator has the necessary discretionary authority and control over the Plan to require deferential judicial review

2

pursuant to the U.S. Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch* (1989)." (*Id.*)

In December of 2009, Valeo's Human Resource Director, Robert Wade, verbally notified Plaintiff that his job position was being transferred to Mexico, and that he had the option of transferring to Mexico.[1] (Record at 83, 66). After Valeo's year-end break, Plaintiff did not go in to work on January 4, 2010 or January 5, 2010. On January 5, 2010, Plaintiff emailed his supervisor, Francis Curis, asking him to confirm that the position in Mexico would not be paid in U.S. dollars, that he would not be entitled to receive social security contributions, and that he would not have access to U.S. healthcare coverage. (Record at 99). In a reply email, Curis responded, "correct." (*Id.*)

On January 7, 2010, Plaintiff wrote the following letter to his supervisor, Francis Curis:

> It is with deep regret that I inform you that I will be unable to accept Valeo mandated transfer to Mexico. I accepted my current position with the agreement that I would be working in Michigan with a certain compensation package and benefits.
>
> Unfortunately, Valeo mandated transfer to Mexico is not comparable to my existing employment terms, among others, on base salary, benefits, accrued benefits, and working hours week, nor is it offering to continue making further contributions to the U.S. Social Security or provide U.S. health coverage. Therefore, given my concern about Valeo Inc.'s ability to honor my existing employment terms or to offer me a position with comparable employment terms, I am forced to look at other options as of January 11, 2010.

---

[1] Although Valeo claims that "the administrative record is devoid of any evidence suggesting that Valeo advised Plaintiff of an effective date for his transfer," (Obj. at 3), in a letter dated February 17, 2010, Robert Wade specifically states, "while you are correct that arrangements were in process for you to start working in Mexico on Monday, January 11, 2010, those arrangements were based on your actions to that date." (Record at 66) (emphasis in original). This statement is evidence clearly suggesting that there was an effective date in place for Plaintiff's transfer.

> It has been an honor to have been a part of this company for 13 years. Years in which I raised a family, purchased my first home, became part of the community and was fortunate to become an American citizen. I wish the company every success and hope the door remains open in the future.
>
> In keeping with company policy, I trust that my severance package will be honored and I thank you for this consideration.

(Record at 63).

In a letter dated January 8, 2010, Valeo's Human Resources Manager, Andy Lowe, responded to Plaintiff's letter, stating:

> We received and have accepted your voluntary resignation of employment effective Friday, January 8th. We certainly wish you good luck in the options that you are pursuing as of January 11, 2010.
>
> Also, we want to correct and respond to some of the statements you made in your January 7th letter. First, at the time you resigned, no offer had been made to you regarding the potential transfer to its Mexican operations. Furthermore, in accordance with our policies, you will be paid all compensation and benefits due to you as of the day of your resignation, with no additional severance owed.
>
> The purpose of this letter is to confirm the terms of your separation from Valeo, Inc. effective January 8th, 2010.

(Record at 64).

On January 30, 2010, Plaintiff sent a letter to Wade, responding to Lowe's letter. In that letter, Plaintiff stated:

> I was very surprised to learn that according to Andy's letter presumably 'no offer had been made' to me 'regarding the potential transfer to its Mexican operations', when in fact I was scheduled to start working in Mexico by January 11, 2010 according to various communications and email records I have on this matter. Moreover, on December 4, 2009, I was informed by Mrs. France Curis that my position was being transferred to Mexico and that you had come to

4

> my office in the week of December 7, 2009 to personally ask me if she had conveyed with me Valeo's decision on such transfer. All of which evidencing Valeo's mandated transfer to Mexico and its readiness to breach my employment terms and benefits.

(Record at 65). Plaintiff concluded, "In addition, I did not submit[] a resignation letter but was turning down your mandated transfer to Mexico." (*Id*.).

Wade responded in a letter dated February 17, 2010, stating:

> The position you last occupied was transferred to Mexico as a wholesale transfer of a position, and not one offered on a temporary basis that would have entitled you to return to a position to the United States. Such positions are not subject to expatriate benefits. Valeo moved the position based on the Company's business decision to reorganize its operations on a worldwide basis. A Mexican Controller was appointed in late 2009 in Mexico, naturally calling for a tax director for Mexico to be assigned to work with the Controller in Mexico. Also you were an at-will employee; Valeo had no obligation to continue the terms of the position you held in the United States after the job was moved to Mexico.
>
> Furthermore, while you are correct that arrangements were in process for you to start working in Mexico on Monday, January 11, 2010, those arrangements were based on your actions to that date. You had posed a number of questions to the Company. You did not, however, provide the Company with any options in response to your apparent non-acceptance of the answers that had been provided; nor did you timely advise that you were rejecting the position. Instead, before any confirmed written offer could be presented to you, you chose to resign. Moreover, you did so without sufficient notice to the Company, causing us to be unable to timely find a suitable replacement. You left to pursue other employment and as such Valeo has no obligation under its policies to pay severance.

(Record at 66).

Plaintiff responded to Wade on April 30, 2010, again denying that he resigned from his position and reaffirming his position that Valeo decided to eliminate his position in the United States. (Record at 68). Again, Wade responded to Plaintiff in letter dated May 27, 2010, and

stated the following:

> First in contrast to your efforts to revise what actually occurred, your words were clear when we spoke – you were 'resigning.' Also, contrary to your effort to take portions of sentences out of context, we did not eliminate the U.S. position; we moved it in accordance with our reorganization. The job of tax director for Mexico was relocated, logically, to Mexico.

(Record at 69).

On June 16, 2010, Plaintiff's attorney requested that Valeo's Plan Administrator review Valeo's denial of severance benefits. (Record at 72-73). In the written request, Plaintiff alleged that he did not voluntarily resign, but rather declined to accept the mandated transfer to Mexico, and thus should be entitled to severance benefits. (*Id*.).

On July 2, 2010, Valeo sent a letter to Plaintiff's counsel that stated, "This letter is the written decision of the Plan Administrator of the Valeo, Inc. Employee Benefit Plan (the "Plan") regarding Octavio Penedo's claim for Plan severance benefits (the "Claim") . . . ." (Record at 148). The decision is signed by the Plan Administrator, who happened to be Robert Wade – the Human Resource Director who notified Plaintiff of the mandated transfer and who initially determined that he was not eligible for benefits. The letter provides:

> Because Mr. Penedo voluntarily resigned his employment with the Company, there is no other basis on which he qualifies for Plan severance benefits. The Plan provides that 'even if one of the events described above occurs' a covered employee 'will not be eligible for severance benefits' (emphasis in the Plan document) if the employee voluntarily terminates his employment with the Company. This superseding rule is found in the Plan's 'Severance Benefit Program' document at 'How do I Receive Benefits?' section on page 2 of that document. The 'events described above' are the Plan's regular triggers for severance benefits, e.g., discontinuation or change of organization or operation where an individual is employed, or elimination of an individual's job or position, or not being offered a

> comparable or better position with the company or an affiliate after the sale of a company facility where an individual is employed. Refer to the same cited Plan provision. Accordingly, even if one of the listed triggers had occurred as to Mr. Penedo, his voluntary resignation eliminated all of his eligibility for Plan severance benefits due to the rule cited above.

(Record at 149).

Plaintiff subsequently filed this action on July 27, 2010.

ANALYSIS

Pursuant to FED. R. CIV. P. 72(b), a party objecting to the recommended disposition of a matter by a Magistrate Judge must file objections to the R&R. "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*.

A.   The Magistrate Judge did not misconstrue the Plan's eligibility language.

First, Plaintiff objects to the Magistrate Judge's interpretation of the Plan's requirements for severance benefits eligibility. Specifically, the R&R states, "For Plaintiff to be eligible for severance benefits under Valeo's Plan, it must be shown that (1) his position or job was eliminated *or* there was 'a discontinuation or change of organization or operation where you are employed,' and (2) he did not voluntarily terminate his employment with Valeo." (R&R at 6) (emphasis added). Valeo contends that the proper construction of the Plan is that, "Plaintiff's employment must have been 'permanently and involuntary terminated ***because of*** . . . a discontinuation or change of organization or operation where [he was] employed [or] the elimination of [his] job or position.'" (Obj. at 8). Valeo further contends that the Magistrate

7

Judge's interpretation of the Plan's eligibility language "erroneously disregards that such an initial trigger is required to establish eligibility under the plan." (*Id*. at 9)

As stated above, the actual terms of the Plan provide:

> You will be eligible for severance benefits under the Plan if your employment is permanently and involuntarily terminated because of one of the following events:
>
> - a discontinuation or change of organization or operation where you are employed;
>
> - the elimination of your job or position;
>
> - the sale of a facility where you are employed if you are not offered a comparable or better position with the buyer or successor employer or with the Company or an entity related to the Company by common ownership;
>
> - any other reason as determined by the Company, in its sole discretion.
>
> However, even if one of the events described above occurs, you will not be eligible for severance benefits if:
>
> - you voluntarily terminate your employment with the Company . . .

(Record at 57).

After reviewing the terms of the Plan, the Court finds that the Magistrate Judge's interpretation of the Plan's eligibility clause is an accurate reflection of the terms of the Plan. The "trigger" that Valeo is presumably referring to is the clause that states "if your employment is permanently and involuntarily terminated," which is just before the enumerated list of events that must occur for eligibility. The R&R clearly states that, in order to be eligible for severance benefits one of the requirements Plaintiff must show is that "(2) he did not voluntarily terminate

8

his employment with Valeo." Thus, the Magistrate Judge specifically included the involuntary termination requirement in its analysis. Substantively, there is no difference between requiring "involuntary termination" as a trigger for events that may permit severance benefits, or treating "voluntarily termination" as a bar to recovery of severance benefits.[2] In this case, the Magistrate Judge found that there was a discontinuation or change of organization or operation where Plaintiff worked, and that, considering all the circumstances, the evidence weighed in favor of the fact that Plaintiff did not voluntarily resign. Thus, the Court finds that the Magistrate Judge properly construed the requirements of the Plan's Eligibility language.

B.  The Magistrate Judge did not erroneously add a basis for eligibility to the Plan.

Next, Valeo contends that the Magistrate Judge added "constructive discharge" as a basis for eligibility for severance benefits under the Plan. (Obj. at 9).

The Magistrate Judge found that, in reviewing all the evidence as a whole, Plaintiff's termination was more like an involuntary termination. This Court agrees with Plaintiff that the R&R does not hold that Plaintiff was constructively discharged and that Valeo's argument to the

---

[2]In addition to there being no substantive difference between the Magistrate Judge's and Valeo's interpretation of the Plan eligibility clause, Valeo blatantly misconstrues its own Plan Administrator's conclusion in an attempt to create a material difference. Valeo asserts that the "if your employment is permanently and involuntarily terminated" clause is the "trigger" clause upon which the Plan Administrator relied when he held, "Accordingly, even if one of the listed triggers has occurred as to Mr. Penedo, his voluntary resignation eliminated all of his eligibility for Plan severance benefits . . .." (Record at 149). It is clear from the context of his July 2, 2010 decision, however, that the Plan Administrator is referring to one the four enumerated events (in bullet points) that must occur for Plaintiff to become eligible for benefits. In fact, the Plan Administrator specifically states, "The 'events described above' are the Plan's regular triggers for severance benefits, e.g., discontinuation or change of organization or operation where an individual is employed, or elimination of an individual's job position, or not being offered a comparable or better position with the company or an affiliate after the sale of a company facility where and [sic] individual is employed." (*Id.*)

9

contrary is a misrepresentation of the Magistrate Judge's analysis. The R&R emphasized that there was no evidence that Valeo gave Plaintiff any other options other than to accept an inferior position in Mexico. The Magistrate Judge stated:

> There is certainly a rational and plausible basis for the Plaintiff's contention that he did not do so. His position as Tax Director for Mexico, which he held in Michigan for some 13 years, was transferred "wholesale" to Mexico, with a material reduction in pay and benefits. The Plaintiff was told he had the "option" to transfer to Mexico (AR 83), but the record does not show that Valeo gave him any other options. In fact, in his letter of February 17, 2010, Robert Wade affirmatively stated that "Valeo had no obligation to continue the terms of the position you held in the United States after the job was moved to Mexico." (AR 66). Mr. Wade also made note that Plaintiff was "an at-will employee," a statement that, while not relevant to Plaintiff's entitlement to severance benefits, tends to support a finding that the position in Mexico was a take-it-or-leave-it proposition. Indeed, even after the Plaintiff made it clear that he was not resigning, but rather declining the transfer to Mexico, Valeo offered no alternative or equivalent employment. Notwithstanding the repeated use of the talismanic phrase "voluntary resignation" in its correspondence, Valeo's actions could be more accurately viewed as a constructive discharge.

(R&R at 7).

Indeed, the R&R merely addresses a number of factors that weigh in favor of finding that Plaintiff's termination was involuntary. The Magistrate Judge did not hold Plaintiff's was constructively discharge. Valeo's objection on this issue is denied.

C.  <u>The Magistrate Judge applied the proper standard of review and did not erroneously give too much weight to Valeo's conflict of interest.</u>

The Court will address Valeo's next several objections together. Valeo contends that the Magistrate Judge failed to properly apply the arbitrary and capricious standard of review. (Obj. at 11). Valeo also contends that "the R&R erroneously gave great weight to a purported conflict

of interest and finds that such conflict demonstrates that the denial of benefits was arbitrary and capricious." (*Id*. at 13). Valeo further asserts that Plaintiff's conflict of interest argument is, in actuality, a claim of bias, which Plaintiff did not timely raise. Again, this Court disagrees.

"When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was rational in light of the plan's provisions. Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Williams v. International Paper Co.,* 227 F.3d 706, 712 (6th Cir. 2000). A Plan administrators decision will be upheld as long as it was the "result of a deliberate, principled reasoning process and is supported by substantial evidence." *Cox v. Standard Ins. Co.*, 585 F.3d 295, 302 (6th Cir.2009) (quoting *DeLisle v. Sun Life Assur. Co. of Canada*, 558 F.3d 440, 444 (6th Cir.2009)).

In this case, the Plan Administrator's decision was not supported by *substantial* evidence. It is true that the R&R provides that, in reading Wade's January 7, 2010 letter, "if viewed in isolation, one could *perhaps* draw a rational conclusion that it was a letter of resignation." (R&R at 7) (emphasis added). As stated above, when viewed in the context of all communications between Plaintiff and Valeo,[3] the evidence weighs significantly in favor of the determination that the Plan Administrator's decision was arbitrary and capricious, and factors such as the Plan Administrator's conflict of interest emphasize that result. Valeo provided no evidence that the

---

[3]In its objections, Valeo quotes segments of the R&R and states, "The R&R even concedes that the 'context of all the facts' supports a 'permissible' inference that Plaintiff voluntarily resigned. (Obj. at 13). In reality, the R&R reads, "Again, in the context of all the facts, that is not a particularly strong inference, but it is a permissible one." (R&R at 8). In reading the R&R as a whole, the Magistrate Judge is clearly conveying that, while it is a permissible inference, it is not a particularly strong inference in light of all the facts.

offer to transfer to Mexico was anything other than a "take it, or leave it" offer. Based upon the circumstances, interpreting Plaintiff's January 7, 2010 letter as a resignation letter is quite a stretch. Valeo attempts to spin Plaintiff's statements that he "will look at other options as of January 11, 2010" and that he "wish[ed] the company every success and hope[d] the door remain[ed] open in the future," as evidence that Plaintiff resigned. The undertones of Plaintiff's January 7, 2010 letter clearly show that Plaintiff felt he had no option but take the position in Mexico or leave Valeo because his position would no longer exist, and that Plaintiff was simply attempting to leave the company, where he had worked for more than 12 years, on good terms. Moreover, based upon Valeo's own admissions, Valeo moved Plaintiff's position as a result of a change of organization or operation. Thus, Plaintiff fulfilled the eligibility requirements of the Plan's severance package.

      Additionally, the Magistrate Judge did not give too much weight to the Plan Administrator's conflict of interest. First, as discussed above, the Magistrate Judge considered the facts surrounding Plaintiff's termination as a whole, and contrary to Valeo's contention, the conflict of interest is not merely a claim of bias. The record reflects that Robert Wade wore two hats in the decision making process. Valeo concedes in its objections that Wade served as Plan Administrator. (Obj. at 14). Thus, not only did Valeo serve as the employer and Plan Administrator, but *the same individual* served as Valeo's Human Resource Director who took the position that Plaintiff resigned, *and* served as the Plan Administrator. In his administrative review as Plan Administrator, Wade goes so far as to reference himself in the third-person, stating, "The Plan Administrator has also consulted . . . with Robert Wade, Valeo, Inc.'s Human Resource Director." (Record at 148). This is sufficient evidence that Wade's decision as Plan

Administrator was, at least in part, motivated by his own prior dealings with Plaintiff as Human Resource Director. Such a conflict of interest cannot be overlooked.

Accordingly, the Court finds that the Magistrate Judge correctly applied the arbitrary and capricious standard.

D.     The Magistrate Judge did not consider evidence outside of the record.

In the R&R, the Magistrate Judge stated:

> In his May 27, 2010 letter, Robert Wade suggested that the Plaintiff's job was not 'eliminated,' but rather it was moved to Mexico. While this argument seems somewhat facile – no U.S. manufacturing jobs have been eliminated over the past 20 years, they have simply been moved to cheaper labor markets in other countries – it is not necessary to resolve this fine semantic distinction, because Valeo concedes that it "moved the [Plaintiff's] position based on the Company's business decision to reorganize its operations on a worldwide basis.

(R&R at 6).

Valeo contends that the statement, "no U.S. manufacturing jobs have been eliminated over the past 20 years, they have simply been moved to cheaper labor markets in other countries," is not included in the administrative record and thus the magistrate judge improperly considered this as evidence. This objection is also without merit. The Magistrate Judge was simply stating that Valeo's argument was merely one of semantics. In any event, the Magistrate Judge specifically stated that it did not consider the issue in its analysis. (R&R at 6).

## CONCLUSION

For the reasons set forth above, the Court **ADOPTS** the August 31, 2011 Report and Recommendation (D.E. No. 29) in its entirety.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (D.E. No.

13

11) is **GRANTED** and Defendant's motion to affirm the Plan Administrator's decision (D.E. No. 12) is **DENIED**.

    **IT IS SO ORDERED**.

                                    S/Sean F. Cox
                                    Sean F. Cox
                                    United States District Judge

Dated: March 26, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 26, 2012, by electronic and/or ordinary mail.

                                    S/Jennifer Hernandez
                                    Case Manager